529 So.2d 606 (1988)
Carlyle WILLIAMS, et ux.
v.
TAYLOR MACHINERY, INC.
No. 57281.
Supreme Court of Mississippi.
July 13, 1988.
*607 William S. Lawson, Tupelo, T. Robert Hill, Hill, Boren & Strickland, Jackson, Tenn., Thomas J. Lowe, Jr., Jackson, for appellants.
Kenneth R. Shuttleworth, Shuttleworth, Smith, Young & Webb, Memphis, Tenn., Dan W. Webb, Shuttleworth, Smith, Young & Webb, Tupelo, for appellee.
Before DAN M. LEE, SULLIVAN and ANDERSON, JJ.
ANDERSON, Justice, for the Court:
This is an appeal from a ruling of the Circuit Court of Lee County granting a directed verdict to defendant/appellee Taylor Machinery, Inc. in a personal injury action.
Carlyle Williams lives in Crockett County, Tennessee; he worked for the Highway Department in neighboring Haywood County. His job was to drive a bulldozer and compress garbage at the county landfill near Brownsville. In 1980, the department decided to buy a new Caterpillar compactor, so it contacted Taylor Machinery (which handled Caterpillar machines) to arrange a demonstration of the Caterpillar 826B model.
On December 11, 1980, the new machine was brought to the landfill by Taylor's employee, Dale Elley. The salesman, knowing that Williams was the usual operator, suggested that he step onto the machine while Elley explained its workings. Williams stood on a platform on the side of the machine, while Elley stayed inside the enclosed cab. After explaining the mechanisms, Elley suddenly started the machine and drove it up a slope of garbage with Williams still clinging to the outside. After Elley had driven around the garbage dump for awhile, he ran into a soft spot and the compactor began to tilt towards the side to which Williams was clinging. As Elley struggled to right the machine, Williams was seen to slump down, whereupon several bystanders signaled Elley to stop. It was discovered that Williams' eyes had rolled back, he had spittle running from his mouth, and his hands had to be pried loose from the guardrail. Williams was taken to the emergency room at the hospital in Brownsville, where the attending physician diagnosed him as having suffered a stroke probably brought on by fear. Since the accident Williams has only partially recovered. He is able to walk and speak with difficulty, but cannot feed himself or read. He is totally disabled.
On June 28, 1982, Williams filed a complaint in the Circuit Court of Lee County, alleging that Elley was guilty of negligence *608 in failure to operate the trash compactor with reasonable care, and that Taylor Machinery was vicariously liable for the actions of its employee. As noted above, Williams is a Tennessee resident. Dale Elley lives in Memphis, TN. Taylor Machinery is a Tennessee corporation, legally qualified to do business in Mississippi. It does, in fact, do business in Mississippi on a regular basis; it is undisputed that it maintains a business office in Tupelo.
On defense motion, Dale Elley was dismissed from the action for lack of personal jurisdiction; Taylor Machinery defended the action alone. The first trial resulted in a mistrial. A new jury was empaneled and trial was held in the Circuit Court of Lee County on May 30, 1985. At the conclusion of the plaintiff's proof and on motion of the defendant, the trial judge granted a directed verdict in favor of Taylor Machinery, giving his opinion that under Tennessee law the damage sustained by Williams was not sufficiently foreseeable to be compensable. Williams has appealed the dismissal, and Taylor Machinery has cross-appealed on several grounds.

LAW

CROSS ASSIGNMENT OF ERROR NO. I: THE ACTION AGAINST TAYLOR MACHINERY SHOULD HAVE BEEN DISMISSED FOR LACK OF IN PERSONAM JURISDICTION.
In order for the state court to assert personal jurisdiction over an out-of-state defendant, two conditions must be met: There must be a statute conferring such jurisdiction, and the exercise of such jurisdiction must comport with the requirements of the due process clause of the Fourteenth Amendment of the United States Constitution, as laid down in the famous case of International Shoe Co. v. Washington, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95, 102 (1945), and its progeny. A state asserting personal jurisdiction over a non-resident defendant must establish that he has "certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice."
Taylor Machinery asserts that it lacks such minimum contacts. Although it is not disputed that Taylor Machinery does business in a systematic fashion in Mississippi, it seems to argue that because the cause of action did not accrue in Mississippi, the due process clause forbids personal jurisdiction over Taylor Machinery in this case.
No court has ever imposed such a requirement. In fact, the Supreme Court has held expressly to the contrary. It said:
Even if the cause of action does not arise out of or relate to the foreign corporation's activities in the forum state, due process is not offended by a state subjecting the corporation to its in personam jurisdiction when there are sufficient contacts between the state and the corporation. Helicopteros Nacionales de Colombia, S.A., v. Hall, 466 U.S. 408, 414, 104 S.Ct. 1868, 1872, 80 L.Ed.2d 404, 411 (1984).
See also, Perkins v. Benquet Consolidated Mining Co., 342 U.S. 437, 72 S.Ct. 413, 96 L.Ed. 485 (1952); and Administrators of the Tulane Educational Fund v. Cooley, 462 So.2d 696, 703 (Miss. 1984).
This would seem to dispose of any contention that in personam jurisdiction over Taylor Machinery violates the federal constitution.
The statutory basis of personal jurisdiction over Taylor Machinery is Mississippi Code Annotated, Section 79-1-27 (Supp. 1986), which has since been repealed, but was in full force at the time of the litigation. It states:
Foreign corporations subject to suit in this state. Any corporation claiming existence under the laws of any other state or of any other country foreign to the United States, found doing business in this state, shall be subject to suit here to the same extent that corporations of this state are, whether the cause of action accrued in this state or not.
See also, Shewbrooks v. A.C. and S., Inc., 529 So.2d 557 (Miss. 1988) and Read v. *609 Sonat Offshore Drilling, Inc., 515 So.2d 1229 (Miss. 1987).
Since Taylor Machinery was qualified to do business in this state and was in any event, a corporation under Section 79-1-27, as it read at the time, there was no obstacle, statutory or constitutional, to a suit against it in Mississippi.

CROSS ASSIGNMENT OF ERROR NO. II: TENNESSEE'S STATUTE OF LIMITATIONS SHOULD HAVE BEEN APPLIED TO BAR THIS ACTION.
Tennessee has a one-year statute of limitations on negligence actions. Tenn. Code Ann., § 28-3-104. Taylor Machinery argues that since both parties to the suit are Tennesseans and the cause accrued in Tennessee, Tennessee constitutes the "center of gravity" for choice of law purposes and that Tennessee's statute of limitations should therefore be applied to bar this action. But as Williams points out, Mississippi has always considered statutes of limitation procedural, and the "center of gravity test" enunciated in Mitchell v. Craft, 211 So.2d 509 (Miss. 1968) applies to substantive law. Taylor Machinery relies on the recent case of White v. Malone Properties, Inc., 494 So.2d 576 (Miss. 1986). In that case, we applied the statute of limitations created by Louisiana's workmen's compensation statute to bar a claim in Mississippi. However, the real significance of White is that it carves out an exception to the substantive/procedural dichotomy for a certain class of cases. The holding in White was that where a statute creates a right of action which previously did not exist and the same statute fixes the time to commence the action, the time so fixed is not a statute of limitations but an integral part of the right created. White, 494 So.2d 578. White, emphatically did not throw out the rule that Mississippi's statute of limitations must govern most tort actions. That may be seen from Justice Robertson's concurring opinion, which strongly criticized the majority for failing to do so. 494 So.2d at 581-82 (Robertson, J., Concurring.).
Taylor Machinery also argues that MCA § 15-1-65 (1972), our "borrowing statute," should be interpreted as requiring the application of Tennessee's statute of limitations and thus barring the present action. Our current rule is that this statute was intended to govern an entirely different class of cases. See., e.g., Fisher v. Burk, 123 Miss. 781, 806, 86 So. 300, 303 (1920); Robinson v. Moore, 76 Miss. 89, 103, 23 So. 631, 633 (1898); Louisville & Nashville RR v. Pool, 72 Miss, 487, 490, 16 So. 753, 753 (1895). This rule has been the subject of considerable controversy, but in two recent cases we pointedly refused to revise it. Shewbrooks v. A.C. and S., Inc., 529 So.2d 557 (Miss. 1988);[1]White, supra, 494 So.2d at 579.

CROSS ASSIGNMENT OF ERROR NO. III: THERE WAS NO BASIS FOR VICARIOUS LIABILITY.
Williams could not have sued either Elley or Taylor Machinery in Tennessee because the statute of limitations had run. He could not sue Elley in Mississippi because our courts lacked personal jurisdiction over him. Tennessee has a rule that where an injured party is barred from suing the servant, he is likewise barred from suing the master under the doctrine of respondeat superior where the action is based solely on the employee's negligence. Stewart v. Craig, 208 Tenn. 212, 344 S.W.2d 761, 763 (1961).
However, on examination of the Tennessee cases we found on this issue indicates that in all of them, the bar against suing the master was one of substantive law. E.g., Smith v. Henson, 214 Tenn. 541, 381 S.W.2d 892, 897 (1964); (family tort immunity); Steward v. Craig, supra (covenant not to sue); McGee v. County of Wilson, 574 S.W.2d 744, 747 (Tenn. App. 1978) (release of actual tortfeasor).
We found no Tennessee case in which the bar to suing a master arose from the running of the statute of limitations. However, *610 Tennessee courts have consistently held that the statute of limitations bars only the remedy; it has no effect at all on any substantive right of the plaintiff. E.g., Hackworth v. Ralston-Purina Co., 214 Tenn. 506, 381 S.W.2d 292, 294 (1964); Menefee v. Davidson County, 195 Tenn. 547, 260 S.W.2d 283, 285 (1953); Rankhorn v. Sealtest Foods, 63 Tenn. App. 714, 479 S.W.2d 649, 652 (1971). In view of this policy, we believe that Tennessee would not hold that the running of the statute creates the type of bar necessary to preclude an action based on respondeat superior.

DIRECT ASSIGNMENT OF ERROR NO. I: THE TRIAL JUDGE ERRED IN HIS APPLICATION OF THE CONCEPT OF FORESEEABILITY OF TENNESSEE'S LAW OF NEGLIGENCE.
In granting the motion for a directed verdict, the trial judge relied on Spivey v. St. Thomas Hospital, 31 Tenn. App. 12, 211 S.W.2d 450 (1947). The decisive passage in his opinion is as follows:
Reading further, and the court in quoting from other decisions, the quote says "the risk reasonably to be perceived defines the duty obeyed."
This opinion says to me that illogical, unnatural and improbable consequences of negligence, I think it says more or less that in the opinion, are not compensable.
Spivey involved a man with a high temperature, who was brought to a hospital and was placed in a bed near a window on an upper floor. He became delirious with his fever, climbed out the window and sustained fatal injuries in the ensuing fall. A jury found the hospital guilty of negligence. On appeal the hospital argued that the patient's behavior was so extraordinary that the harm to him was unforeseeable. The Tennessee court rejected this argument, holding that the hospital had a duty not to create an unreasonable risk of harm to the patient. "If it did, such cases hold defendant liable for all injuries within the reasonable range of such risks, whether they could have been foreseen or not." Spivey, 211 S.W.2d at 455. The court went on to say:
If the actor's conduct is a substantial factor in bringing about harm to another, the fact that the actor neither foresaw nor should have foreseen the extent of the harm or the manner in which it occurred, does not prevent him from being liable.
211 S.W.2d at 456-57. (Quoting Restatement of Torts, § 435).
It seems the trial judge overlooked this section and focused instead on the passage stating that "the risk reasonably to be perceived defines the duty to be obeyed." In so doing, he begged the whole question. Whether or not a particular risk was reasonably foreseeable is, except in the most extraordinary circumstances, a matter for the jury. Here the decision was taken from the jury by a directed verdict.
Moreover, Spivey is but one of the Tennessee cases holding that the specific nature of the harm to the plaintiff need not have been foreseen; it "would be enough that some such harm of like general character was reasonably foreseeable as a likely result of the defendant's failure to use due care." Coatney v. Southwest Tenn. Electric Membership Corp., 40 Tenn. App. 541, 292 S.W.2d 420, 424 (1956). See also, e.g., Dawson, v. Sears, Roebuck & Co., 217 Tenn. 72, 394 S.W.2d 877 (1965). The Tennessee Supreme Court has also held that the fact that an accident is "unusual or freakish" does not make the harm unforeseeable as a matter of law. City of Elizabethtown v. Sluder, 534 S.W.2d 115, 117 (Tenn. 1976).
The present case hardly presents an example of an unforeseeable harm under this standard. It is common knowledge that extreme emotional distress can produce physical effects on the human body. Nor is it unforeseeable that swift operation of a dangerous machine over bumpy or uneven ground could produce extreme fear in a person clinging precariously to the side of that machine.
In short, the trial judge erred in holding this harm unforeseeable as a matter of law. His judgment must be reversed and the case remanded for trial on the merits.
REVERSED AND REMANDED.
*611 ROY NOBLE LEE, C.J., HAWKINS and DAN M. LEE, P.JJ., and PRATHER, ROBERTSON, SULLIVAN, GRIFFIN and ZUCCARO, JJ., concur.
ROBERTSON, J., concurs by separate opinion on cross-assignment of error No. 2.
PRATHER and ANDERSON, JJ., join this concurrence.
ROBERTSON, Justice, concurring:
There is no more reason for Mississippi to apply its statute of limitations in this action than our law on the respondeat superior and foreseeability issues tendered in this case, issues the majority quite appropriately decides under Tennessee law. I am still waiting for someone to articulate a rational basis for employing on limitations issues a choice of law analysis different from that employed with ordinary "substantive" law questions. Of course, I have uttered on this subject twice, first in White v. Malone Properties, Inc., 494 So.2d 576, 581-82 (Miss. 1986) (Robertson, J., concurring) and most recently in Shewbrooks v. A.C. & S., Inc., 529 So.2d 557, 568 (Miss. 1988), and there could be no profit in a rehash of those discussions here.
I accept for the moment that the choice of law/limitation of actions issue in this case is within the scope of our holding in Shewbrooks and, I accept, for the moment, that Shewbrooks is the law in this state and is controlling precedent this day.
A touch of irony attended our May 11, 1988, Shewbrooks decision, for eight days later the American Law Institute with but a lone dissenting vote adopted a new Section 142 to the Restatement (Second) of Conflicts of Laws and thus declared to the nation Shewbrooks' obsolescence. I trust no one would dispute my thought that any Las Vegas odds-maker would project that, with the ALI's adoption of new Section 142, it is simply a matter of time before forum states cease altogether applying their longer statutes of limitations to actions barred in the state of the center of gravity or of the most substantial contacts.
I this day respect the doctrine of precedent and on the authority of Shewbrooks cast my vote to reverse. I do so well aware that among the pages of the history of our law are strewn many dead carcasses of demonstrably unjust laws  and Shewbrooks does indeed announce demonstrably unjust law. The day will come when this Court will abandon its nostalgia trip to the 1950s and powered by the lightning of Restatement Section 142 bolt back to the future.
PRATHER and ANDERSON, JJ., join in this opinion.
NOTES
[1] Shewbrooks and our decision this day have been predicated wholly upon state law. We note, however, that the Supreme Court of the United States has held that there is no federal constitutional impediment to our application of our longer statute of limitations in this context. See Sun Oil Company v. Wortman, ___ U.S. ___, 108 S.Ct. 2117, 100 L.Ed.2d 743 (1988).